**Dated: May 22, 2019**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                          )
                                                )
Joseph Paul Fanning and              )          Case No. 18-11163-JDL
Sarah Fay Fanning                       )          Ch. 13
                                                )
                          Debtors.        )

## <u>CORRECTED ORDER DENYING DEBTORS' OBJECTION TO CLAIM # 5</u>

### I. Introduction

Wells Fargo Bank (Wells Fargo) is the holder of a first mortgage on the Chapter 13

Debtors' residence. Debtors challenge the reasonableness of Wells Fargo's claim of

$1,400 for pre-petition foreclosure attorney fees.  Before the Court for consideration are:

(1) *Debtors' Amended Objection to Proof of Claim #5* [Doc. 51] and (2) the *Response to*

*Debtors' Objection to Proof of Claim #5* filed by Wells Fargo [Doc. 57].

On April 12, 2019, the matter came on for evidentiary hearing.[1]  After consideration

---

[1]The hearing on the present case was conducted concurrently with two other Chapter 13 cases in which the issues presented were similar.  *In re Judith Darlene Snow*, Case No. 18-14846; *In re Wilma Jeanne Morris,* Case No. 18-13787-JDL.

At the commencement of the hearing the Court announced, and the parties agreed, that the court would take judicial notice of all matters filed on the Court Docket Sheet, including those pleadings which may have antedated and been supplemented or amended by the specific

of the arguments of counsel, the evidence submitted and the applicable law, the Court announced its decision from the bench.  For the reasons stated in open court which are incorporated herein by reference, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52(a), made applicable to these bankruptcy proceedings by Fed.R.Bankr.P. 7052 and 9014(c).[2]

## II. Jurisdiction

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Order of Reference contained in Local Rule LCvR 81.4 of the United States District Court for the Western District of Oklahoma.  This is a contested matter under Rule 9014 to determine whether attorney's fees incurred pre-petition in a Chapter 13 case by a creditor holding a claim secured by a mortgage encumbering a debtor's principal residence are allowable under Rule 3001.  Thus, this is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B) - allowance or disallowance of claims against the estate - and the court may enter a final order herein.  Both the Debtors and Wells Fargo have participated fully in the litigation of this matter without challenging the jurisdiction of this Court to enter final orders and have thus consented to the same.

## III. Findings of Fact

1. On February 14, 2018, Wells Fargo filed a petition for foreclosure against the Debtors in The District Court in and for Oklahoma County, Oklahoma, Case No. CJ-2018-

---

pleadings listed in the Introduction to this Order. There was further no objection by any of the parties to the Witness and Exhibit Lists filed by the Debtors [Doc. 55] and Wells Fargo [Doc. 56].

[2] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

897 (the "Foreclosure").[3]

2. On March 26, 2018, Debtors filed a voluntary petition for relief pursuant to Chapter 13 of Title 11 of the United States Bankruptcy Code. [Doc.1].

3. In their Schedule D, Creditors Who Have Claims Secured by Property, the Debtors listed the claim of Wells Fargo which was secured by the Debtors' principal residence at $68,777 and valued the residence at $78,500. [Doc.1, pg.18].

4. On May 8, 2018, pursuant to Rule 3001, Wells Fargo timely filed a Proof of Claim (POC) (Official Form 410) in which it listed the amounts due on the petition date under the Note and the Mortgage, including principal, interest, pre-petition fees and charges, escrow deficiency, and the calculation of the pre-petition arrearage. [POC 5-1]. In its POC, Wells Fargo asserted a secured claim in the amount of $71,213.96 secured by a first mortgage on the Debtors' principal residence. [POC 5-1]. The POC Part 5: "Loan Payment History from First Date of Default" states a claim for $1,400 in attorney's fees (in separate increments of $1,000 posted on 2/14/2018 and $400 posted on 3/6/2018).

5. Bret D. Davis ("Davis") testified that he was the attorney representing Wells Fargo in the Foreclosure against the Debtors. Davis, has practiced law for 26 years with the Lamun Mock Cunnyngham & Davis law firm ("Lamun Mock") in Oklahoma City, which Davis described as a "default services" law firm, focusing on representing creditors in

---

[3] The Court is entitled to take judicial notice of both its own docket sheets and the state court docket sheets. *United States v. Ahidley*, 486 F.3d 1184, 1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *Adams v. Watts,* 2009 WL 5101759 (W.D. OK. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie,* 2006 WL 2792671 (W.D. OK. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter,* 79 Fed.Appx. 383, 391 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R.Evid. 201).

various stages of state court foreclosures, bankruptcies, evictions, title matters and litigation involving foreclosures and bankruptcy. Davis works in all practice areas, including state court foreclosures, title matters, general business litigation, complex litigation, bankruptcy litigation and appellate practice. His Affidavit filed in the case [Doc. 57-1] stated that he billed 6.2 hours on the foreclosure proceedings which at his normal billing rate of $275 would total $1,705. Upon cross-examination at the hearing and as reflected in the time records attached to the Affidavit [Doc. 57-1, pg. 2-3], Davis testified that he had expended 4.7 hours and another attorney with the firm, Greg Young (with approximately 15 years experience), had expended 1.5 hours. Davis testified that none of the recorded 6.2 hours of time included any non-attorney time.

6. These hourly rate charges, however, were not ever charged to Wells Fargo, nor are they sought to be recovered as a claim in this bankruptcy. Davis testified that the Lamun Mock firm had a contractual "flat fee" arrangement with Wells Fargo of $1,400 for the filing of a foreclosure, the amount of attorney's fees claimed in the POC. [POC 5-1].

### IV. Burden of Proof

If the creditor files a proof of claim, the claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Rule 3001(f) states that "a proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." The objecting party carries the burden of going forward with evidence supporting the objection to the validity of the amount of the claim. *In re Wheatley,* 251 B.R. 430, 432 (Bankr. N.D. Okla. 2000); *In re Eastman*, 588 B.R. 600, 602 (Bankr. D. Colo. 2018). Such evidence must be of a probative force equal to that of the

allegations of the proof of claim in order to shift the burden of ultimate persuasion to the proponent of the claim. *In re Fullmer*, 962 F.2d 1463, 1466 (10th Cir. 1992), abrogated on other grounds, *Raleigh v. Illinois Dept. of Revenue*, 503 U.S. 15, 120 S.Ct. 1951 (2000); *Eastman*, supra.; *4 Collier on Bankruptcy*, ¶ 502.02 (3)(f) (16th Ed. 2019).

Debtors argue that the party seeking court approval of attorney's fees bears the burden of proving the same. That may be true in many instances but not in this case. Wells Fargo's POC is filed under Rule 3001, not under Rule 3002.1 which places the burden of proof for post-petition fees upon the claimant/mortgagee. Nor is Wells Fargo seeking attorney's fees as a moving party. It is merely seeking fees as part of its POC.

Rule 3001(c)(2)(A) provides, in relevant part, that:

> If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

The question then becomes whether Wells Fargo's POC contains the required itemization under Rule 3001 quoted above. If it doesn't, Wells Fargo would not enjoy the Rule 3001(f) evidentiary effect of a claim that is filed in accordance with the Rules. Rule 3001(f) provides the proof of claim that is in compliance with the Rule shall constitute *prima facie* evidence of the amount and validity of the claim. If Wells Fargo's claim is not entitled to that evidentiary presumption, it bears the full burden of proof to support its Claim. *In re Jimenez*, 487 B.R. 543, 546 (Bankr. D. Colo. 2013).

Judge Janice Karlin faced the virtually identical issue as the one presented here in *In re Kennedy*, 568 B.R. 367, 372-73 (Bankr. D. Kan.2017). There the Court stated as follows:

5

The current proof of claim form requires that claimants check a box if their claim "includes interest or other charges in addition to the principal amount of the claim." If it does, claimants are then instructed to attach an "itemized statement of interest or charges." In support of its proof of claim, (creditor) attached the promissory note, a borrower "summary sheet" listing types of loans and their status, and then a print out of the loan payoff sheet for Debtor's loans, listing the principal outstanding, the unpaid interest accrued, the unpaid collection costs, and the unpaid other charges, and the total payoff.

****

Obviously, to ensure compliance with the intent of Rule 3001, providing more information is always the better choice. But the Court does not find here that (Creditor) failed under Rule 3001(c)(2)(A) to give enough information such that Debtor could not "make clear the basis for the claimed amount." (Creditor) broke down its total claim into principal, interest, charges, and collection costs, and gave the subtotal for each category. From this information, debtor was able to determine what portion of the claim to object to, and how to frame her objection. As a result, the Court chooses not to exercise its discretion to impose a remedy under Rule 3001(c)(2)(D), and concludes that (Creditor's) proof of claim was filed in accordance with Rule 3001, thereby entitling (Creditor) to the presumption of prima facie evidence of the validity and amount of its claim.

Thus, the court held that the creditor was "entitled to the presumption of *prima facie* evidence of the validity and amount of its claim, and that the 'standard' burden-shifting framework for claims applied. This Court agrees. Furthermore, in the present case, Wells Fargo attached to the POC copies of the Note and Mortgage, and the breakdown of charges which was more specific than the creditor in *Kennedy* (Wells Fargo itemizing "attorney's fees" while in Kennedy the creditor listed "unpaid collection costs and unpaid other charges"). The burden of proof was therefore upon the Debtors to refute the $1,400

6

claim for attorney's fees.[4]

In the present case, even if the Objection filed by the Debtor prior to Wells Fargo coming forward with its Affidavit and time records [Doc. 57-1] had shifted the burden of proof to Wells Fargo to establish its claim, Wells Fargo's evidence at trial overwhelmingly established that it had met any such burden of proof.

## V. Analysis

Oklahoma follows the "American Rule" with regard to the recovery of attorney's fees, i.e. each litigant bears the cost of his legal representation and courts are without authority to assess and award attorney's fees in the absence of a specific statute or specific contractual provision between the parties. *Kay v. Venezuelan Sun Oil Co.*, 1991 OK 16, 806 P.2d 648; *Whitehorse v. Johnson,* 2007 OK 11,156 P.3d 41; *Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240, 247, 257-59, 95 S.Ct. 1612 (1975); *Baker Botts, L.L.P. v. ASARCO LLC.*, __U.S.__, 135 S.Ct. 2158 (2015) (The "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."). The parties agree that both the underlying Note and Mortgage provide for the recovery of attorney's fees by Wells Fargo.[5]   The question is

---

[4] In their pleadings and as argued by their counsel at the hearing, Debtors contend that Wells Fargo should have set forth in its Proof of Claim the detailed time records justifying the $1,400 attorney's fee.  Debtors seem to be implying that Rule 2016(a) standards should apply to a Proof of Claim. Rule 2016 requires an entity seeking interim or final compensation for services or reimbursement of necessary expenses from the estate to file an application setting forth a detailed statement of services rendered and amounts requested. With respect to pre-petition fees, Wells Fargo is not required to comply with Rule 2016 because it is not seeking compensation for services rendered during the bankruptcy case or for services rendered to the bankruptcy estate.

[5] "Debtors concede Claimant (Wells Fargo) is entitled to reasonable attorney's fees under the terms of the Note and Mortgage." [Doc. 51, ¶ 16].  See also Mortgage, ¶ 7 ("If Borrower fails

whether there is an evidentiary basis for the claimed $1,400 pre-petition attorney's fees for the foreclosure and whether that fee is reasonable.

Davis testified that he and one other attorney in the firm expended a total of a 6.2 hours at the hourly rate of $275, or $1,705. Wells Fargo, however, does not seek to recover its attorney's fees on an hourly basis but only the $1,400 it was charged under its flat-fee arrangement with Lamun Mock. The Court is not bound by any fee agreement between the attorney and the client rather, the Court's responsibility is to determine whether the fee requested is reasonable. *In re Covemaker*, 2011 WL 2020856 at *1 (Bankr. C.D. Ill. 2011) ("So even flat fee arrangements must be evaluated for reasonableness on the basis of time expended.").

In making this assessment, the Court employs the factors in *State of Oklahoma, ex rel. Burk v. City of Oklahoma City,* 1979 OK 115, 598 P.2d 659. There, the Oklahoma Supreme Court set forth the factors which courts should apply in determining a reasonable attorney's fee. *Burk* started with establishing an hourly compensation rate, and then added an additional amount based on the following factors: (1) time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal services

---

to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property.... Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.") [POC 5-1 Part 3, pg. 7]; Mortgage, ¶ 8 ("Fees. Lender may collect fees and charges authorized by the Secretary") [POC 5-1 Part 3, pg. 7]; Note, ¶ 6(C) ("Payment of Costs and Expenses. If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.") [POC 5-1, Part 3, pg. 2].

8

properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

With these factors in mind, we turn to the evidence and testimony presented. Significantly, the Debtors did not come forward with *any* expert testimony[6] to refute Wells Fargo's contention that its pre-petition attorney's fees of $1,400 was reasonable despite their bearing the burden of proof. Debtor did call Wells Fargo's attorney, Davis, as their own expert, but Davis did not opine that the fees were unreasonable. To the contrary, he testified that Lamun Mock was being underpaid for their services. Debtors neither presented evidence nor argued what they thought was a reasonable amount of attorney fees. Further, though Debtors argued in all three cases tried at the same time that certain time expended by the law firms was for non-compensable "ministerial" or "clerical" functions, no such argument can be made with regard to the present case. None of the

---

[6] The Debtors did not produce any witnesses or evidence to dispute the reasonableness of the fees in question, but simply relied on "case law" for their contention that the fees were unreasonable. This was a fact issue, that required the support of relevant and admissible evidence. "Evidence, broadly defined, is the means from which an inference may logically be drawn as to the existence of a fact; that which makes evident or plain. Evidence is the demonstration of a fact; it signifies that which demonstrates, makes clear, or ascertains the truth of the very fact or point in issue, either on the one side or on the other. In legal acceptation, the term 'evidence' includes all the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved. 'Evidence' has also been defined to mean any species of proof legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, concrete objects, and the like." 31A C.J.S. *Evidence* § 3, at 67-68 (1996).

time entries were made for non-attorney time. [Doc. 57-1, pgs. 2-3].

The remaining argument made by the Debtors was that "upon information and belief", no time records existed such that Wells Fargo could attest with certainty exactly how much time was expended. [Doc. 51, ¶ 27]. In response to this assertion, Wells Fargo did produce time records, albeit reconstructed records. [Doc. 57-1].

A. **Contemporaneous Time Records**.

Debtor correctly argues, and Wells Fargo does not dispute, that production of detailed time records is required when a creditor seeks recovery of its pre-petition fees and expenses under Rule 3001. After receiving the objection to fees filed by the Debtor, Lamun Mock did produce its detailed time records to support the fee requested. [Doc. 57-1]. The undisputed evidence was that while increments of time were not entered contemporaneously, the services rendered, the date they were rendered and the individual performing the services were maintained contemporaneously in the firm's case management system.

Debtors argue that the failure to keep contemporaneous time records bars Wells Fargo's recovery of attorney fees. Under applicable Oklahoma law contemporaneous attorney time records are not required. Even the seminal *Burk* case allowed attorney's fees which were reconstructed. *State of Oklahoma, ex rel. Burk v. City of Oklahoma City,* 1979 OK 115, 598 P.2d 659; See also *Usrey v. Wilson*, 2003 OK CIV APP 25, 66 P.3d 1000 (permissible under Oklahoma law to base a fee award ". . . on a reconstruction of the time spent on a case based on other records which verify the activity in the case, such as the court file or the attorney's copies of letters, pleadings or file memoranda."); *Spencer*

10

*v. Oklahoma Gas & Electric Co.*, 2007 OK  76, n. 20, 171 P.3d 890.

Even under the federal courts' stricter standards, the Tenth Circuit does "not forbid . . . the use of reconstructed time records and does not demand that the reconstructed hours be arbitrarily reduced."  *Ramos v. Lamm*, 713 F.2d 546, 553, n. 2 (10th Cir. 1983). Nonetheless, since "reconstructed time records generally represent an overstatement or understatement of time actually expended," courts are instructed to "give special scrutiny to any reconstruction or estimates of time expended and make reductions when appropriate." *Id.*  In determining whether the fees claimed are reasonable, "[A] district court may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that 'reveal all hours for which compensation is requested and how those hours were allotted to specific tasks'." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).   Lamun Mock's time records and testimony are sufficiently detailed for the Court to "establish the reasonableness of each dollar and each hour for which the party seeks an award." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).  Based on the evidence, there is no grounds by which this Court should deny or discount the requested attorney's fees.

B. **Block-Billing**

At the hearing, Debtor argued that Lamun Mock had engaged in "block billing" precluding recovery for services rendered.  The term "block billing" refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks".  *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n. 9 (10th Cir. 1998); *Harolds Stores, Inc. v. Dillard*

*Dep't Stores, Inc*., 82 F.3d 1533, 1554 n.15 (10th Cir. 1996), cert. denied, 519 U.S. 928,

117 S.Ct. 297 (1996).  So-called block billing consists of attorneys recording large blocks

of time for tasks without separating the tasks into individual blocks or itemizing the amount

of time each task took.  This imprecise time keeping practice creates problems for the court

reviewing a fee application because it does not fulfill the fee applicant's obligation to submit

"detailed time records" that identify how much time was spent on each task. *Robinson,* at

1284.  The decision whether block billing indicates an unreasonable claim should remain

with the trial court who should be allowed to exercise its discretion accordingly.  *Hamilton*

*v. Boise Cascade Express*, 519 F.3d 1197,1207 (10th Cir. 2008).  Where block billing

makes it difficult, if not impossible, for the Court to determine the amount of time spent on

specific tasks, a general reduction in attorney fees may be warranted.  *See, Robinson,* at

1281;  *Silver Creek Investments, Inc. v. Whitten Construction Management, Inc.*, 2013 OK

CIV APP 49, 307 P.3d 360 (reduction of requested fee by 15% for block-billing).

    The Court does not find that Lamun Mock's time records constitute block-billing.

The records contain discrete tasks performed by each attorney within a given time period.

The records have not lumped time together with unrelated tasks, nor did Lamun Mock use

generic or inadequate descriptions, such as "research", "work on motion", "telephone calls

with creditor" or "conferences".  Nevertheless, assuming *arguendo* that block-billing was

present the same would not result in the fees being denied in their entirety.  The Tenth

Circuit has not adopted a *per se* rule prohibiting fees due to block billing.  As stated in

*Flying J Inc. v. Comdata Network, Inc.*, 322 Fed.Appx. 610, 617 (10th Cir. 2009) "We

decline the invitation to craft a rule of law requiring a reduction in fees when attorneys have

12

block billed." *See also, BP Pipeline (N.Am.) Inc., v. C.D. Brown Construction, Inc.*, 473 Fed.Appx. 818, 835 (10th Cir. 2012) ("Nevertheless, we have never mandated a reduction or a denial of a fee request based on block billing."); *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). Even if the Court would find that block-billing was present (which it wasn't) and made a 15% across-the-board reduction of its time-based fee the result would still be more than the flat-fee request being made. The Court therefore finds Debtor's block-billing argument unpersuasive.

## VI. Conclusion

After reviewing the Lamun Mock firm's time entries, reviewing the applicable law, hearing the testimony of the witness and drawing on the Court's own experience in presiding over hundreds, if not thousands, of Chapter 13 cases, the Court finds Wells Fargo's evidence convincing. The Court finds Wells Fargo's request for a $1,400 fee for pre-petition services in the Foreclosure was authorized, reasonable, and allowable.

The Court's decision today should not be read as holding that in this Court an attorney's flat fee arrangement with its mortgagee client is *prima facie* evidence of the reasonableness of the fee. The amount of a reasonable fee is based on a case-by-case factual basis; there is no precise rule or formula applied. Rather, the essential inquiry is one of reasonableness; and the court exercises discretion to reach an equitable award. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 436, 103 S.Ct. 1933 (1983); *Pelican Products Corp. v. Moreno*, 893 F.2d 1143, 11480 (10th Cir. 1990).

**IT IS HEREBY ORDERED** that the *Debtors' Amended Objection to Proof of Claim #5* [Doc. 51] is hereby **Denied.**

# # #

13